[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11471

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2010
JOHN LEY
CLERK

D. C. Docket No. 9:09-cv-80706-KAM

ANDREW PRETKA,
PAUL LITVAK,
MICHELLE LITVAK,
PETER O'CONNELL,
HARRIET DINARI,
on behalf of themselves and others
similarly situated,

Plaintiffs-Appellees,

versus

KOLTER CITY PLAZA II, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 8, 2010)

Before EDMONDSON, CARNES and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

The underlying dispute in this case involves luxury condominiums in West Palm Beach, Florida. The plaintiffs entered into contracts to purchase units in Two City Plaza, a new high-rise building that offers ocean views and "cruise-like amenities" such as a Zen Garden, Moonlight Theatre, and a rooftop resort pool and steam room.[1] The plaintiffs were eager to enjoy those amenities, but there was trouble in paradise, or in getting paradise constructed. Extensive construction delays (and maybe a downturn in the real estate market) turned the plaintiffs' eagerness for the promised condos into eagerness to get out of their contracts. After the developer, Kolter City Plaza II, Inc., refused to let the plaintiffs out of the contracts, they filed a class action lawsuit against Kolter in Florida state court, alleging violations of the Florida Condominium Act as well as breach of contract.

This appeal is not about the merits of the lawsuit but about whether it will be decided in state or federal court. It brings us important issues of federal removal jurisdiction and the Class Action Fairness Act, the decision of which requires that we take a close look back at Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir. 2007). The district court relied on Lowery in granting the plaintiffs' motion to remand this lawsuit back to state court. We think it

_____

[1] See Two City Plaza, Amenity Tour, http://www.twocityplaza.com/amenityTour.php (last visited May 11, 2010); Two City Plaza, Building Amenities, http://www.twocityplaza.com/amenity.php (last visited May 11, 2010).

2

misapplied or overextended that decision. As we will explain, <u>Lowery</u> was a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and the decision must be read in that context. While some of the language of the opinion sweeps more broadly, it is dicta insofar as a § 1446(b) first paragraph case, like this one, is concerned. While we may consider dicta for its persuasive value, we are not persuaded to follow <u>Lowery</u>'s dicta about the type of evidence a defendant that removes a case under the first paragraph of § 1446(b) may use in establishing the requisite amount in controversy.

## I. FACTS AND PROCEDURAL HISTORY

On April 9, 2009, Andrew Pretka, Paul Litvak, and Michele Litvak filed a class action complaint against Kolter in Florida state court. Kolter was served with a copy of the initial complaint on the same day. On April 27, 2009, those three plaintiffs, joined by Peter O'Connell, Harriet Dinari, Bruce Fisher, and Daniel D'Loughy, filed an amended complaint and had it served two days later. The two complaints are materially identical except that the amended complaint was brought by all seven, instead of just three, named plaintiffs. (For simplicity, we will refer to the amended, operative complaint as "the complaint" unless otherwise noted.)

3

Based on alleged violations of the Florida Condominium Act, as well as breach of contract, the plaintiffs sought in the complaint "to rescind the purchase and sale contracts and obtain the return of their deposits and the return of the deposits for all similarly situated depositors." Complaint ¶ 3. As for the amount in controversy, the question at the heart of this appeal, the complaint is indeterminate. It states that the case "is an action for monetary damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees." Id. ¶ 4.

The complaint, however, does contain some additional information on the amount in controversy. Copies of the named plaintiffs' contracts are attached to the complaint. Those exhibits share "identical contract language" not only with each other, but also with the contracts executed by unnamed putative class members.[2] Id. ¶ 22. One part of that identical contract language is a line where the parties to each agreement entered the "Initial Deposit" paid to the escrow agent, the amount of which was "equal to 10% of [the] Purchase Price." Another part of the contract language shared by the agreements is an entry for the "Construction Payment" paid to the seller, the amount of which also was "equal to

_____

[2] The complaint explains that "as a matter of law, every agreement for the purchase of a unit in the subject condominium was required to be identical in form" and that Kolter had to file the prospective form agreement with the Federal Office of Interstate Land Sales Regulation. Complaint ¶ 23; see also id. ¶ 47 (stating that "all persons who entered into the identical form purchase and sale agreement as the Class Plaintiffs" will be included in the class).

10% of the Purchase Price." It is undisputed that the sum of each plaintiff's "initial deposit" and "construction payment" count toward the amount in controversy; the plaintiffs want both of those deposits returned.[3] The six exhibits attached to the complaint, on which the required deposit amounts have been written, show that the named plaintiffs agreed to make initial deposits and construction payments totaling $628,240; the total deposit per condominium ranging from $73,780 to $121,600, with the average being $104,707.[4]

The complaint also states that "[t]he class is believed to consist of over 300 members." Id. ¶ 48. The complaint and its attachments do not identify all the class members, but it alleges that their identity is "a matter capable of ministerial determination" from Kolter's records. Id. ¶ 55 ("The only individual, as opposed to common, issue is the identification of the class members who provided deposits for construction of a condominium unit to the Defendant, a matter capable of

---

[3] The complaint seeks the return of "all sums deposited" by the plaintiffs, including the so-called construction payment. See Complaint ¶ 37 ("all sums deposited"); id. ¶ 53 (referring to deposits "for the construction" of each condominium); id. ¶ 55 (referring to "deposits for construction").

[4] Because one of the condominium units was purchased jointly by named plaintiffs Paul and Michele Litvak, there are seven named plaintiffs but only six exhibits.

Exhibits A through F of the amended complaint show that: Pretka agreed to make a deposit of $118,720; Paul and Michele Litvak agreed to make a deposit of $121,600; O'Connell agreed to make a deposit of $89,240; Dinari agreed to make a deposit of $103,620; Fisher agreed to make a deposit of $73,780; and D'Loughy agreed to make a deposit of $121,280.

ministerial determination from Defendant's records."). The complaint also alleges that the named plaintiffs' claims are typical of those of the class. Id. ¶ 49 ("Plaintiffs' claims are typical of those of the class members. All claims are based on the same factual and legal theories involving the same Condominium building, the same form contract (required by law to be identical for all purchasers), the same delinquent developer, the same basis for rescission and/or breach, and the same ultimate relief—the return of the purchasers' deposits.").

On May 8, 2009, which was the twenty-ninth day after the initial complaint was filed, Kolter removed the case to the Southern District of Florida, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Kolter's notice of removal stated that the proposed class consists of more than 100 members, that the parties are minimally diverse, and that the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

Kolter's notice of removal also stated that CAFA's amount-in-controversy requirement was met because the company had "collected purchase deposits for units at the Two City Plaza condominium totaling in excess of $5 million." Kolter supported that factual assertion by attaching to the notice of removal a sworn declaration by Michael Clarke, Chief Financial Officer of Kolter's parent

6

company.[5]  In his declaration, Clarke states that Kolter's corporate records are maintained under his "supervision, direction, and control" and that he had personal knowledge of the facts that he was setting forth.  Clarke stated that Two City Plaza contains 468 luxury units, and that "more than 100 prospective purchasers of condominium units at Two City Plaza have executed the same purchase and sale form contracts as those attached as exhibits to the Amended Complaint, save for certain buyer-specific addenda to those contracts."[6]  He also attested that Kolter had "collected more than $5 million in condominium unit purchase deposits from prospective purchasers of units at Two City Plaza."  On that basis, Kolter's notice of removal argued that "it is clear from the allegations of the Amended Complaint as well as the facts set forth in this Notice of Removal that the amount in controversy in this case exceeds the $5,000,000 minimum required under 28 U.S.C. § 1332(d)(2)."

---

[5] A sworn declaration is legally the same as an affidavit.  See 28 U.S.C. § 1746.

[6] Clarke's statement that "more than 100" prospective purchasers are involved does not contradict the plaintiffs' broader allegation of "over 300" putative class members.  After all, "over 300" is "more than 100."  Clarke probably referred to "more than 100" putative class members because that is all he needed to show in order for Kolter to satisfy CAFA's numerosity requirement.  See 28 U.S.C. § 1332(d)(11)(B)(i) (providing that for a civil action to qualify as a mass action under CAFA, the case must involve the "monetary relief claims of 100 or more persons").

The plaintiffs filed a motion to remand on May 26, 2009, arguing that Lowery required the district court to ignore Clarke's declaration because it was not a document received from the plaintiffs. 483 F.3d at 1213–15 ("[U]nder [28 U.S.C.] § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction.").

On June 12, 2009, Kolter filed an opposition to remand making several contentions. First, it contended that the jurisdictional amount is "readily deducible" from the plaintiffs' complaint, even if Clarke's declaration were ignored. See id. at 1211 ("If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction."). Kolter based that assertion on an extrapolation from the named plaintiffs' deposit amounts to at least 301 named and unnamed class members.[7] Second, Kolter contended that Lowery, a torts case, does not apply to a contract-related dispute, such as this case, where the defendant has unique

_____

[7] Kolter argued that the smallest "initial deposit" made by a named plaintiff—not including the "construction payment" that each plaintiff also agreed to pay—was $36,890. That amount multiplied by 301, the minimum number of putative class plaintiffs, is $11,103,890—more than twice the threshold requirement of CAFA.

8

knowledge of the value of the plaintiffs' claims. See Lowery, 483 F.3d at 1214 n.66 ("A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff."). Accordingly, Kolter argued that it could rely on Clarke's declaration as evidence of the amount in controversy. Third, Kolter contended that the district court could and should consider the evidence that it had submitted with its opposition to remand. The bulk of that post-removal evidence was the first three pages of every unnamed plaintiff's contract—i.e., every agreement executed by a purchaser whose deposits Kolter had not returned. Another exhibit attached to Kolter's opposition to remand was a sworn declaration from Francine Gutierrez, the Contract and Closing Manager for Kolter's parent company. Gutierrez attested that she had personally reviewed all of the contracts, as well as the financial records for the purchase deposits that Kolter still held. Based on her review, Gutierrez swore that Kolter possessed condominium purchase deposits totaling $41,183,226.08.[8]

The district court held a hearing on November 13, 2009, to hear argument on whether the amount in controversy exceeds $5 million. At the hearing the

---

[8] Kolter also submitted, with its opposition to remand, three demand letters that it had received from plaintiffs' counsel. We will not address that evidence, however, because Kolter expressly stated in its reply brief that it "is not asking this Court to consider any such letters."

plaintiffs argued that they "just don't know" their potential damages "at this point in time," primarily because the number of class plaintiffs was uncertain. With respect to the damage amount for each class member, however, the plaintiffs admitted that "we look at, as the Defendants did in their analysis, the various deposit amounts." Relying on the Lowery decision, the plaintiffs argued that the district court, in assessing the amount in controversy, was limited to the "four corners" of the documents the plaintiffs had provided to the defendants; they insisted that the Clarke and Gutierrez declarations, as well as the unnamed plaintiffs' contracts, were all "extraneous."

The district court granted the plaintiffs' motion to remand on November 30, 2009, ruling that Kolter had failed to prove, by a preponderance of evidence, that the amount in controversy exceeds $5 million. See Pretka v. Kolter City Plaza II, Inc., No. 09-80706, 2009 WL 4547042 (S.D. Fla. Nov. 30, 2009). Specifically, the district court: (1) read Lowery as barring consideration of Clarke's declaration, Gutierrez's declaration, and the unnamed plaintiffs' contracts because none of them is "a document received by Defendant from Plaintiffs"; (2) read Lowery as requiring it to reject Kolter's "impermissible speculation" on the "potential damage claim of putative class members, as opposed to named plaintiffs"; (3) and read Lowery as barring consideration of the Gutierrez

declaration and the unnamed plaintiffs' contracts because Kolter did not submit them at the time of its notice of removal. Kolter applied to this Court for permission to appeal on December 9, 2009, and we granted the application on April 5, 2009.[9]

## II. THE JURISDICTIONAL REQUIREMENTS FOR REMOVAL

We review de novo the district court's decision to remand a CAFA case to state court for lack of subject matter jurisdiction. Lowery, 483 F.3d at 1193; Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir. 2006); see 28 U.S.C. § 1453(c)(1) (creating an exception to 28 U.S.C. § 1447(d) for CAFA cases).

CAFA gives the district courts subject matter jurisdiction to entertain a "mass action" removed from state court provided that at least four requirements are met. "These requirements are: (1) an amount in controversy requirement of an aggregate of $5,000,000 in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity requirement that the action involve the monetary claims of 100 or more plaintiffs; and (4) a commonality requirement that the plaintiffs' claims involve common questions of law or fact." Lowery, 483 F.3d at 1202–03;

---

[9] The order granting Kolter's application began a sixty-day period within which this Court must "complete all action on such appeal, including rendering judgment," 28 U.S.C. § 1453(c)(2). See Evans v. Walter Indus., Inc., 449 F.3d 1159, 1162–63 (11th Cir. 2006) (holding that the sixty-day period begins when the court of appeals grants leave to appeal). On May 27, 2010, we issued an order granting the court, for good cause shown and in the interests of justice, a ten day extension to, and including, June 14, 2010. See 28 U.S.C. § 1453(c)(3)(B).

11

see 28 U.S.C. § 1332(d)(11). The only one of those requirements that is contested in this appeal is the first one—whether the amount in controversy exceeds $5 million.

A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later. See Vega v. T-Mobile UNITED STATES, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009); Miedema, 450 F.3d at 1332 n.9; Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 946 (11th Cir. 2000) (holding that a court may consider evidence submitted after the removal petition is filed, "but only to establish the facts present at the time of removal"). As the First Circuit has explained, "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009); see also McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation."); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005).

"Indeterminate complaints pose two independent analytical problems, which should not be, but sometimes are, confused." Robinson v. Quality Ins. Co., 633 F. Supp. 572, 575 (S.D. Ala. 1986). The first problem is whether removal is jurisdictionally proper. See 28 U.S.C. § 1332. The second problem is whether removal is timely, which is not a jurisdictional issue. See 28 U.S.C. §§ 1446, 1453(b); see also In re Uniroyal Goodrich Tire Co., 104 F.3d 322, 324 (11th Cir. 1997) ("The untimeliness of a removal is a procedural, instead of a jurisdictional, defect."); Weeks v. Fid. & Cas. Co. of N.Y., 218 F.2d 503, 504 (5th Cir. 1955)[10] ("[T]he time limitation prescribed by the removal statute within which a petition for removal may be filed is not jurisdictional, but is merely modal and formal . . . ."). We will discuss the jurisdictional issues here and the procedural issues in Part III.

### A.  The Burden of Persuasion and Standard of Proof

"CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006); see also Lowery, 483 F.3d at 1207–08; Miedema, 450 F.3d at 1328. "Where, as here, the

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); see also Lowery, 483 F.3d at 1208–10; Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356–57 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [applicable] jurisdictional requirement." (emphasis added)), overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000).

We concluded in Lowery that it would be "impermissible speculation" for a court to hazard a guess on the jurisdictional amount in controversy "without the benefit of any evidence [on] the value of individual claims." 483 F.3d at 1220; see also id. at 1214–15 ("If [the defendant's] evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings. The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." (footnote and citation omitted)); Miedema, 450

14

F.3d at 1332. Because the proper interpretation of Lowery's "impermissible speculation" rule is important, we will explain it in greater detail.

In Lowery the defendant, Alabama Power, had attached to its notice of removal copies of the initial complaint and the third amended complaint, but nothing else. 483 F.3d at 1189 & n.8. Those pleadings offered no specific facts on the amount in controversy. See id. at 1219 ("[The third amended] complaint contains neither an ad damnum clause indicating the amount of damages sought, nor any other concrete information about the value of plaintiffs claims." (emphasis added)); see also Lowery v. Honeywell Int'l, Inc., 460 F. Supp. 2d 1288, 1291 (N.D. Ala. 2006) ("There is nothing in the original complaint to distinguish between a plaintiff who may be claiming severe lung disease from one who may be claiming grit in her grits.").

The notice of removal in Lowery contained a conclusory allegation that CAFA's amount-in-controversy requirement had been satisfied, but that was not enough. See Williams, 269 F.3d at 1320 ("A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.").

Recognizing the shortcomings of Alabama Power's notice of removal, the Lowery plaintiffs filed a motion to remand. In response, Alabama Power filed a supplement to its notice of removal, pointing out that to reach CAFA's $5 million jurisdictional threshold, each of the 400 plaintiffs' claims would need to put in controversy only $12,500. The supplement argued it was evident more than $5 million was in controversy because plaintiffs in recent mass tort cases in Alabama had received jury verdicts or settlements exceeding that amount. Lowery, 483 F.3d at 1189. But the supplement failed to explain the facts of those other tort cases or link them to the facts of the Lowery case. See id. at 1221 ("Looking only to this evidence and the complaint, the facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute—with a record bereft of detail—we cannot possibly ascertain how similar the current action is to those the defendants cite."); Lowery, 460 F. Supp. 2d at 1299 ("Defendants' hopeful conjecture based on Alabama jury verdicts in cases that may have some similarity to this case, but are not closely similar, do[es] not suffice . . . .").

We concluded in Lowery that Alabama Power's supplement and its additional "'evidence'"—note the scare quotes—about other mass tort cases told

16

us "nothing about the value of the claims" because the record was "bereft of detail" about whether the plaintiffs' complaint was similar to those other cases. Lowery, 483 F.3d at 1220–21; see also id. ("Absent specific detail about the present action, the supplement in no way clarifies the aggregate value of the claims here."). The record in Lowery contained only "naked pleadings"—no specific factual details, no discovery, no affidavits or declarations, no testimony, no interrogatories, and no exhibits other than the complaints. We took pains to emphasize that fact. Over and over. See id. at 1189 n.8 ("[A]labama Power cited nothing from such discovery in support of its notice of removal or in its subsequent argument to the district court . . . ."); id. at 1209 ("naked pleadings"); id. at 1210 ("bare pleadings"); id. ("a removal case—like this one—where there is no evidence to review"); id. (distinguishing Lowery from a case in which counsel admitted certain jurisdictional facts during oral argument and another case in which the defendant's employee testified during a pretrial hearing); id. ("naked pleading context"); id. ("only the bare pleadings are available"); id. at 1210–11 ("We have no evidence before us by which to make any informed assessment of the amount in controversy."); id. at 1213 n.63 ("bare pleadings"); id. at 1217 ("[A]labama Power . . . has asserted no factual basis to support federal jurisdiction

17

. . . ."); id. at 1220 (emphasizing that we were "without the benefit of any evidence [regarding] the value of individual claims").

We stated in Lowery that "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." Id. at 1215 (emphasis added). On that basis we concluded that the Lowery defendants had failed to establish federal jurisdiction by a preponderance of the evidence. See id. at 1220–21. But Lowery did not say, much less purport to hold, that the use of deduction, inference, or other extrapolation of the amount in controversy is impermissible, as some district courts have thought. That was not the question in Lowery. Instead, the question was how to apply the preponderance of the evidence standard in the "fact-free context" of that particular case. Id. at 1209. The answer we gave is that without facts or specific allegations, the amount in controversy could be "divined [only] by looking at the stars"—only through speculation—and that is impermissible. See id. at 1209, 1215.

A different question is presented, however, when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.

18

That kind of reasoning is not akin to conjecture, speculation, or star gazing.  See Northup Props., Inc. v. Chesapeake Appalachia, L.L.C., 567 F.3d 767, 770–71 (6th Cir. 2009) (concluding that the defendant's affidavits were specific enough to prevent the determination of the amount in controversy "from becoming a matter of judicial star-gazing"); Siewe v. Gonzales, 480 F.3d 160, 168 (2d Cir. 2007) ("An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." (quotation and other marks omitted)); cf. Maiz v. Virani, 253 F.3d 641, 664 (11th Cir. 2001) ("Suffice it to say that while damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference." (quotation and other marks omitted)).

The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.  Compare Roe v. Michelin N. Am., Inc., 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) ("While it would be speculative to specify the exact dollar amount at issue in this case, it is not speculative to conclude from the egregious conduct alleged that the amount, whatever it is, far exceeds $75,000."), with Miedema, 450 F.3d at 1332 ("Given the particular facts and circumstances of the instant case, the district court did not

19

err when it found that 'great uncertainty' remained about the amount in controversy [and] resolved that uncertainty in favor of remand."). The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life. As Justice Holmes observed, "all life is an experiment. Every year if not every day we have to wager our salvation upon some prophecy based upon imperfect knowledge." Abrams v. United States, 250 U.S. 616, 630, 40 S.Ct. 17, 22 (1919) (Holmes, J., dissenting).

B. The Types of Evidence that May be Used to Support Removal

"When the complaint does not claim a specific amount of damages, removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Williams, 269 F.3d at 1319. "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Id.; see also, e.g., 16 James Wm. Moore et al., Moore's Federal Practice § 107.14[2][g], at 107-86.4 to 107-86.5 (3d ed. 2010) ("When determining if the defendant has satisfied this burden [to establish jurisdiction by a preponderance of the evidence], the court will consider first whether it is facially apparent from the complaint that the jurisdictional amount is in controversy. If it is not, the court

20

may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied.").

The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper. See Williams, 269 F.3d at 1319; Miedema, 450 F.3d at 1330; Sierminski, 216 F.3d at 949 (the district court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal" (quotation marks omitted)); Fowler v. Safeco Ins. Co. of Am., 915 F.2d 616, 617 (11th Cir. 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal."); see also De Busk v. Harvin, 212 F.2d 143, 146 (5th Cir. 1954) (holding, in a case removed under 28 U.S.C. § 1442, that the district court had properly denied the plaintiff's motion to remand based on "[t]he uncontroverted affidavits of appellees, attached as exhibits to the amended petition for removal"). We do not read Lowery as holding to the contrary. If we did, there would be a serious prior panel precedent problem. See United States v. Ohayon,

21

483 F.3d 1281, 1289 (11th Cir. 2007) ("When a decision of this Court conflicts with an earlier decision that has not been overturned en banc, we are bound by the earlier decision."); United States v. Hornaday, 392 F.3d 1306, 1316 (11th Cir. 2004) ("Where there is a conflict between a prior panel decision and those that came before it, we must follow the earlier ones.").

The other circuit courts of appeal that have addressed the issue agree with our circuit law that defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal. See Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991) ("[T]he party seeking to invoke jurisdiction . . . may meet [its] burden by . . . submitting affidavits."); Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957) ("The petition for removal alleged that more than $3,000 was involved, and the affidavits in opposition to the motion to remand furnish ample support for the finding [that the amount in controversy requirement was satisfied]."); USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 206 n.12 (3d Cir. 2003) (holding that a defendant may establish jurisdictional facts by filing affidavits in response to the plaintiffs' motion to remand); Strawn v. AT&T Mobility LLC, 530 F.3d 293, 299 (4th Cir. 2008) (finding the defendant's affidavit sufficient to establish the amount in controversy under CAFA where the plaintiffs

22

had "offered nothing" to challenge its accuracy); Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995) ("If not [facially apparent], a removing attorney may support federal jurisdiction by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."); Northup Props., 567 F.3d at 770–71 (concluding that the defendant's affidavits had established the requisite jurisdictional amount); Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541–42 (7th Cir. 2006) (noting that a removing defendant may establish the amount in controversy "by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands"); Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) ("The district court may consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." (quotation marks and citation omitted)); McPhail, 529 F.3d at 956 ("[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy—either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal

23

court afterward. This roughly parallels a plaintiff's right, under Fed.R.Civ.P. 10(c), to make '[a] copy of a written instrument that is an exhibit to a pleading . . . a part of the pleading for all purposes.'" (citations omitted)). No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can.

With regard to the substantive jurisdictional requirements, which allow consideration of the Clarke and Gutierrez declarations and the unnamed plaintiffs' contracts, Kolter established by more than a preponderance of the evidence that the amount in controversy exceeds $5 million. The complaint seeks a refund of all of the plaintiffs' deposits, and the Gutierrez declaration by itself establishes that the plaintiffs have deposited more than $41 million. Indeed, the plaintiffs concede that Kolter's evidence, if consideration of it is procedurally proper, would establish the amount in controversy by a preponderance of the evidence.

## III. THE PROCEDURAL REQUIREMENTS FOR REMOVAL

The substantive jurisdictional requirements, however, are not the only hurdles that a removing defendant must clear. There are also procedural requirements regarding the timeliness of removal. See 28 U.S.C. §§ 1446, 1453(b). It was on the basis of those procedural requirements that this Court in

24

Lowery rejected evidence submitted by the defendant, Alabama Power. We held that Alabama Power's evidence could not be considered because it was not a document received from the plaintiffs. See Lowery, 483 F.3d at 1221 ("[W]e note that this evidence regarding the value of other tort claims was not received from the plaintiffs, but rather was gathered from outside sources. As such, the evidence is not of the sort contemplated by [28 U.S.C.] § 1446(b)."); see also id. at 1213 & n.63.

The scope of Lowery's "receipt from the plaintiff" rule is a critical issue in this case. The district court held that Lowery barred it from considering Kolter's declarations and the unnamed plaintiffs' contracts because none of those documents was received from the plaintiffs. Kolter contends that Lowery is distinguishable because it was a torts case, instead of a contract-related dispute, and because Lowery and this case were removed under different paragraphs of subsection (b) of § 1446. The plaintiffs contend that the district court got it right and that evidence produced by a defendant cannot be considered. To settle this disagreement we have to examine in some detail the procedural requirements of the removal statute and the interpretation of them in our Lowery decision.

25

## A.  The Two Types of Removal

CAFA's removal provision expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446.[11]  Lowery, 483 F.3d at 1211; see 28 U.S.C. § 1453(b).  Section 1446(b), which governs the timeliness of removal in civil cases, contains two paragraphs.  The first paragraph deals with civil actions that are removable at the time of commencement.  It provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  The second paragraph of the same subsection deals with civil actions that were not removable, or could not have been determined to be removable, until "an amended pleading, motion, order or other paper" establishes their removability.  That second paragraph provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion,

---

[11] With one exception.  Unlike other cases, CAFA cases may be removed more than one year after their commencement, if the other requirements for removal are satisfied.  See 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with [28 U.S.C.] section 1446 (except that the 1-year limitation under section 1446(b) shall not apply). . . .").

order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

Id.; see Am. Law Inst., Federal Judicial Code Revision Project (2004), reprinted in 19A Charles Alan Wright et al., Federal Practice and Procedure 373, 657 (4th ed. 2009); see also Caterpillar Inc. v. Lewis, 519 U.S. 61, 68–69, 117 S.Ct. 467, 472–73 (1996).

Importantly, the present case and the Lowery case were removed under different paragraphs of § 1446(b).  Kolter is not relying on the second paragraph of that subsection to establish the timeliness of its removal but instead on the first one, which applies because Kolter filed its notice of removal within thirty days of being served with the summons and initial complaint.[12]  See § 1446(b) (first paragraph); Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354, 119 S.Ct. 1322, 1328 (1999) ("[I]f the summons and complaint are served together, the 30-day period for removal runs at once.").  Because Kolter filed its notice of removal within the time specified in the first paragraph of § 1446(b), its removal was timely.  See Badon v. RJR Nabisco Inc., 224 F.3d 382, 390 (5th Cir. 2000).  Kolter "do[es] not, and do[es] not need to, invoke the second paragraph's extended filing period."  Id.

_____

[12] Kolter received the summons and initial complaint on April 9, 2009, and filed its notice of removal on May 8, 2009.

27

By contrast, in <u>Lowery</u> Alabama Power removed the case under the second paragraph of § 1446(b).  The notice of removal came three years after the <u>Lowery</u> plaintiffs had filed their initial complaint—long after the closing of the 30-day removal window supplied by the first paragraph of § 1446(b).  <u>See</u> <u>Lowery</u>, 483 F.3d at 1188.[13]  The <u>Lowery</u> opinion itself acknowledges that it is a second paragraph case.  <u>See</u> <u>id.</u> at 1213 n.63 ("In . . . the case before us, the defendant . . . need[s] an 'other paper' to provide the grounds for removal under the second paragraph of § 1446(b).").[14]

B.  <u>Procedural Limits on the Types of Evidence Used to Support Removal</u>

We now turn to what, if any, limits the removal statute places on the types of evidence that may be used by a defendant that removes the case within the time specified by the first paragraph of § 1446(b), a question not presented by the facts

---

[13] In fact, removal under the first paragraph was never an option for any defendant in the <u>Lowery</u> case. When the initial complaint was filed in 2003—two years before Congress enacted CAFA—the <u>Lowery</u> case was not removable because complete diversity among the parties did not exist.  <u>See</u> <u>Lowery</u>, 483 F.3d at 1193 n.24 (explaining the complete diversity requirement that applies to non-CAFA cases); <u>id.</u> at 1187 (noting that all of the original <u>Lowery</u> plaintiffs were Alabama residents); <u>id.</u> at 1190 (noting that some of the <u>Lowery</u> defendants were Alabama corporations).

[14] There is another way the <u>Lowery</u> opinion acknowledges that it was a second paragraph case.  The second paragraph of § 1446(b), but not the first, refers to a document from which removability may first be "ascertained," <u>see</u> 28 U.S.C. § 1446(b), and the <u>Lowery</u> Court concluded that it could not "ascertain" the amount in controversy, 483 F.3d at 1221.

of the <u>Lowery</u> case.  We will begin by looking at how the law in this area has evolved.

Between 1875, when lower federal courts received general removal jurisdiction, and 1948, when Congress enacted 28 U.S.C. § 1446, the Supreme Court repeatedly acknowledged that defendants could establish jurisdictional facts with their own affidavits or other evidence.  <u>See, e.g.</u>, <u>Ex parte Pa. Co.</u>, 137 U.S. 451, 457, 11 S.Ct. 141, 143 (1890) ("If the petition for removal states the facts upon which the allegation is founded, and that petition be verified by affidavit of a person or persons in whom the court has confidence, this may be regarded as <u>prima facie</u> proof sufficient to satisfy the conscience of the court.  If more should be required by the court, more should be offered.").  Indeed, it was "common and recognized" that a removing defendant could rely on affidavits to defeat a motion to remand.  <u>See</u> <u>Cyclopedia of Federal Procedure</u> § 516, at 543 (2d ed. 1943) ("The use of affidavits on the hearing of an application to remand is common and recognized, and the parties may be required to file affidavits."), <u>quoted by</u> <u>Doggett v. Hunt</u>, 93 F. Supp. 426, 430 (S.D. Ala. 1950); <u>see also</u> <u>Land v. Dollar</u>, 330 U.S. 731, 735 n.4, 67 S.Ct. 1009, 1011 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire by affidavits or otherwise, into the facts as they exist."

(internal citations omitted)); Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 445, 30 S.Ct. 125, 129 (1910) ("These affidavits [from both the plaintiff and defendant] are made part of the record by a bill of exceptions and we think they should have been considered upon the question of [removal] jurisdiction."); Carr v. Fife, 156 U.S. 494, 497, 15 S.Ct. 427, 428 (1895) (stating that it "has always been held" that the amount in controversy may be "show[n] by ex parte affidavits").

"We presume that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so." United States v. Baxter Int'l, Inc., 345 F.3d 866, 900 (11th Cir. 2003); see also Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816, 822 (11th Cir. 1998) ("Congress is deemed to know the executive and judicial gloss given to certain language and thus adopts the existing interpretation unless it affirmatively acts to change the meaning." (quotation marks omitted)); White v. Mercury Marine, Div. of Brunswick, Inc., 129 F.3d 1428, 1434–35 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). Indeed, the Supreme Court has applied that presumption when interpreting § 1446(b). See Murphy Bros., 526 U.S. 344, 119 S.Ct. 1322 (reading

30

§ 1446(b) in light of the common-law principle that formal process is required before an individual or entity may be named as a defendant, and finding no indication that Congress tried to break away from the traditional understanding); see also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832, 109 S.Ct. 2218, 2222 n.4 (1989) ("[N]o change in law should be presumed from the 1948 revision of the Judicial Code unless an intent to make such changes is clearly expressed." (quotation marks omitted)).

With that presumption in mind, we do not believe that Congress, when it enacted § 1446, altered the traditional understanding that defendants could offer their own affidavits or other evidence to establish federal removal jurisdiction. The original version of § 1446(b) provided that "[t]he petition for removal of a civil action or proceeding may be filed within twenty days after commencement of the action or service of process, whichever is later." Act of June 25, 1948, ch. 646, Pub. L. No. 773, 62 Stat. 869, 939 (amended 1949); see also Murphy Bros., 526 U.S. at 351, 119 S.Ct. at 1327. That provision contained no limitation on the type of evidence that a defendant could offer once it timely filed a notice of removal. Cf. Murphy Bros., 526 U.S. at 351, 119 S.Ct. at 1327 (stating that Congress enacted § 1446(b) to "give adequate time [for removal] and operate uniformly throughout the Federal jurisdiction." (quotation marks omitted)); 14C

31

Wright et al., Federal Practice and Procedure § 3731, at 482–85 ("The goal is early

resolution of the court system in which the case will be heard.").

Congress amended § 1446(b) in 1949, but the changes did not alter the

traditional rule allowing defendants to offer their own evidence in support of

removals at the commencement of the case. The 1949 amendments made two

changes. First, and unrelated to this case, Congress ensured that the defendant

would have access to the complaint before commencement of the removal period.

See id. at 351–52, 119 S.Ct. at 1327. Second, Congress was concerned that the

removal statute did not incorporate the judicial rule "permitting and requiring the

defendant to file a petition for removal as soon as the action assumes the shape of

a removable case in the court in which it was brought." Powers v. Chesapeake &

Ohio Ry. Co., 169 U.S. 92, 101, 18 S.Ct. 264, 267 (1898). Congress therefore

added the second paragraph to § 1446(b), which has remained essentially the same

to this day.[15] See notes following 28 U.S.C.A § 1446 (Commentary on 1949

revision) ("The second paragraph of the amendment to subsection (b) is intended

---

[15] Congress has made three changes to the second paragraph of § 1446(b) since 1949.
First, the original version referred to the "petition for removal," but it now refers to the "notice of
removal." Second, the time period for removal was expanded from twenty to thirty days. Third,
in 1988 Congress added to the end of the second paragraph of § 1446(b) a sentence providing
that no case may be removed based on diversity of citizenship "more than 1 year after
commencement of the action." 28 U.S.C. § 1446(b); see Judicial Improvements and Access to
Justice Act, Pub. L. No. 100-702, § 1016(b), 102 Stat. 4642, 4669 (1988). That provision,
however, does not apply to CAFA cases. See 28 U.S.C. § 1453(b); supra n.11.

to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions." (citing Powers, 169 U.S. at 101, 18 S. Ct. at 267)). We agree with the Fifth Circuit that "[i]t is wholly evident that the purpose of the second paragraph is to extend the time for filing notice of removal under the stated circumstance, and not to in any event shorten it to less than it would be under the first paragraph." Badon, 224 F.3d at 390.

Although the second paragraph of § 1446(b) offers an additional avenue for removal, that road is not an easy one for defendants to travel. As the Powers Court said, the traditional understanding was that removal was both permitted and required "as soon as the action assumes the shape of a removable case." Powers, 169 U.S. at 101, 18 S.Ct. at 267. Otherwise a defendant could wait and see how it fared in the state court proceedings before deciding whether to remove. The second paragraph of § 1446(b) continues the requirement of promptness. The renewed removal window opens, but only for thirty days, when the defendant receives a document "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (second paragraph).

That language—especially the word "ascertained"—is different from the language

of the first paragraph of § 1446(b). The Fifth Circuit has explained the difference:

> "Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph. To "set forth" means to "publish" or "to give an account or statement of." "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty." The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

Bosky v. Kroger Tex., LP, 288 F.3d 208, 211 (5th Cir. 2002) (footnotes omitted).

## C. The Lowery Decision

As we have already pointed out, Lowery is a second paragraph case. See

supra Part III.A. Its "receipt from the plaintiff" rule is based on the second

paragraph of § 1446(b), and that rule applies if "the case stated by the initial

pleading is not removable" but the case "has become removable" due to changed

circumstances. See 28 U.S.C. § 1446(b) (second paragraph) (emphasis added).

Under the second paragraph of § 1446(b), the defendant's receipt of a document

indicating that the case "has become removable" opens a new 30-day window for

removal. Id. (referring to "other paper from which it may first be ascertained that

the case is one which is or has become removable").[16] The traditional rule is that

---

[16] Removal may also be timely under the second paragraph of § 1446(b) even though the case has not "become removable" due to changed circumstances. The second paragraph of §

34

only a voluntary act by the plaintiff may convert a non-removable case into a removable one.  See Insinga v. LaBella, 845 F.2d 249, 252 (11th Cir. 1988) (explaining the judicially created "voluntary-involuntary" rule that applies in diversity cases);[17] see also Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547 (5th Cir. 1967).  Thus, a defendant cannot show that a previously non-removable case "has become removable" as a result of a document created by the defendant.  See 28 U.S.C. § 1446(b) (second paragraph).

Our predecessor court explained in Gaitor v. Peninsular & Occidental Steamship Co., 287 F.2d 252 (5th Cir. 1961), that an initially non-removable case "cannot be converted into a removable one by evidence of the defendant or by an order of the court."  Id. at 254 (quotation marks and citation omitted) (emphasis

---

1446(b) provides that "[i]f the case stated by the initial pleading is not removable," a notice of removal may be filed within 30 days after the defendant receives "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b) (emphasis added).  "Thus, the statute expressly encompasses the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been manifested only by later papers, revealing the grounds for removal for the first time."  Lovern v. Gen. Motors Corp., 121 F.3d 160, 162 (4th Cir. 1997).  Lowery did not address that particular type of removal, and neither do we.

[17] In Insinga we explained the voluntary-involuntary rule as follows: "[I]f the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed."  845 F.2d at 252 (quotation marks omitted).

added).[18]  That "receipt from the plaintiff" rule plainly does not limit the type of

evidence a defendant may use to establish that the plaintiff's complaint already is

removable—without any "conversion."  See also Addo v. Globe Life & Accident

Ins. Co., 230 F.3d 759, 762 (5th Cir. 2000) ("[The] 'other paper' must result from

the voluntary act of a plaintiff which gives the defendant notice of the changed

circumstances which now support federal jurisdiction."); S.W.S. Erectors, Inc. v.

Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996) (holding that an affidavit executed by

the defendant's attorney did not commence the renewed removal period, under the

second paragraph of § 1446(b), because the affidavit did not arise from a voluntary

act by the plaintiff).  In other words, Lowery's "receipt from the plaintiff" rule has

no application to cases, like this one, which are removed under the first paragraph

of § 1446(b).[19]

---

[18] The Gaitor court quoted a federal question jurisdiction case, Great Northern Railway Company v. Alexander, 246 U.S. 276, 281, 38 S.Ct. 237, 239 (1918), but stated that "the principle enunciated there is applicable" in the context of removal cases based on diversity jurisdiction.  Gaitor, 287 F.2d at 254.

[19] We note that our decision in Thomas v. Bank of America Corp., 570 F.3d 1280 (11th Cir. 2009), did not extend Lowery's "receipt from the plaintiff" rule into the context of first paragraph removals.  In Thomas we affirmed the district court's judgment that removal was improper under CAFA.  The complaint had sought partial refund of fees paid for a credit protection plan by those consumers who were ineligible for the plan's benefits.  The defendants apparently filed their notice of removal within the time limit provided by the first paragraph of § 1446(b).  See id. at 1283 (stating that "a defendant may not simply file a notice of removal thirty days after the filing of the complaint unless that document shows that the CAFA's jurisdictional requirements for an action to be deemed a mass action are met" (emphasis added)).  That notice contained a declaration on the amount of all fees paid by all consumers for the plan.

## 1. The Dicta About First Paragraph Removal Cases

There are statements in the <u>Lowery</u> opinion that are at least arguably

inconsistent with our conclusions in this case, but those statements are dicta. This

is crucial because, "[w]hatever their opinions say, judicial decisions cannot make

law beyond the facts of the cases in which those decisions are announced." <u>Watts</u>

<u>v. BellSouth Telecomms., Inc.</u>, 316 F.3d 1203, 1207 (11th Cir. 2003); <u>accord</u>

<u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1298 (11th Cir. 2010) ("We have pointed

out many times that regardless of what a court says in its opinion, the decision can

hold nothing beyond the facts of that case."); <u>United States v. Aguillard</u>, 217 F.3d

1319, 1321 (11th Cir. 2000) ("The holdings of a prior decision can reach only as

far as the facts and circumstances presented to the Court in the case which

produced that decision." (quotation marks omitted)). Statements in an opinion that

are not "fitted to the facts," <u>Fanin v. U.S. Dep't of Veterans Affairs</u>, 572 F.3d 868,

873 (11th Cir. 2009), or that extend "further than the facts of that case," <u>Nguyen v.</u>

---

In <u>Thomas</u> we did <u>not</u> reject the defendant's declaration out of hand because of its source.
Instead, we agreed with the district court's finding that the contents of the declaration "did not
accurately identify the amount in controversy" because the complaint "did not allege that all of
the . . . customers were entitled to relief for the entire amount of their . . . fees." <u>Id.</u> at 1282–83.
The declaration did not fit the allegations in the complaint, and there was "great uncertainty
regarding the amount in controversy and the class size," <u>id.</u> at 1283, so we had no need to
interpret § 1446(b). <u>Thomas</u> stands for the basic proposition that a fundamentally flawed
declaration, in combination with a complaint providing "no information" on the amount in
controversy, <u>id.</u> at 1282–83, cannot establish jurisdiction by a preponderance of the evidence.

37

United States, 556 F.3d 1244, 1260 (11th Cir. 2009), or that are "not necessary to the decision of an appeal given the facts and circumstances of the case," Aron v. United States, 291 F.3d 708, 716 (11th Cir. 2002) (Carnes, J., concurring) (quotation marks and citation omitted), are dicta. We are not required to follow dicta in our own prior decisions. McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1077 (11th Cir. 1996). Nor for that matter is anyone else. Edwards, 602 F.3d at 1298 ("[D]icta is not binding on anyone for any purpose."). When we encounter dicta about a question in an earlier opinion, we are always "free to give that question fresh consideration." Edwards, 602 F.3d at 1298 (internal quotation marks omitted).

There are two statements in the Lowery opinion with which we disagree and that are at least arguably inconsistent with the result we reach in this case. The first one is that the "receipt from the plaintiff" rule is not limited to removals made under the second paragraph of § 1446(b) but applies to first paragraph removals as well. See Lowery, 483 F.3d at 1213 n.63 ("Under either paragraph, the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction."). That part of the Lowery opinion is not "fitted to the facts," Fanin, 572 F.3d at 873, it does extend "further than the facts of that case," Nguyen, 556 F.3d at 1260, and it is "not necessary to the decision," Aron,

291 F.3d at 716. Because Lowery was not a first paragraph removal case, anything the opinion says about the law applicable to cases removed under the first paragraph of § 1446(b) is dicta, and we are "free to give that question fresh consideration." Edwards, 602 F.3d at 1298 (quotation marks omitted).

Dicta can, of course, have persuasive value. See New Port Largo, Inc. v. Monroe County, 985 F.2d 1488, 1500 n.7 (11th Cir. 1993) (Edmondson, J., concurring) ("We are not necessarily bound by the words of [earlier panel] opinions, although we may be persuaded by them even if not bound."). We are not, however, persuaded by the dicta in the Lowery about first paragraph removals. For one thing, much of the Lowery opinion's reasoning about this matter is pegged to language in the second paragraph of § 1446(b) that is not in the first one. That second paragraph language requires that removal come within thirty days "after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The Lowery opinion relies on that language to support its conclusion that removal requires that the defendant has received—not generated or compiled—a document containing an "an unambiguous statement that clearly establishes federal jurisdiction" and

39

that the defendant has received it from the plaintiff or the court.  See Lowery, 483 F.3d at 1213 n.63.

Interpreting the language from the second paragraph of § 1446(b) in a case where the removal was under that paragraph is one thing.  Implicitly reading that language into the first paragraph of that subsection, where it does not exist, is another thing entirely.  The entire process of statutory interpretation is premised on the principle that statutory words have meaning.  When Congress includes language in one statutory provision but not in another related provision that, too, has meaning.  See Dean v. United States, 129 S.Ct. 1849, 1854 (2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)); Freemanville Water Sys., Inc., v. Poarch Band of Creek Indians, P.C.I., 563 F.3d 1205, 1209 (11th Cir. 2009) ("[W]hen Congress uses different language in similar sections, it intends different meanings." (quotation marks omitted)).  We are not persuaded to cut and paste language from one part of § 1446(b) into another part.

The Lowery opinion also misreads the two decisions it cites for its statement that, "[u]nder either paragraph, the documents received by the defendant must

contain an unambiguous statement that clearly establishes federal jurisdiction."

483 F.3d at 1213 n.63 (citing Bosky, 288 F.3d at 211; Huffman v. Saul Holdings,

LP, 194 F.3d 1072, 1078 (10th Cir. 1999)). The Lowery opinion apparently views

the Bosky and Huffman cases as involving first paragraph removals, but that view

is mistaken. Both of those decisions actually addressed challenges to the

timeliness of removals made under the second paragraph of § 1446(b). See Bosky,

288 F.3d at 211–12 (contrasting the first and second paragraphs of § 1446(b));

Huffman, 194 F.3d at 1077 (noting that the second paragraph of § 1446(b) was in

play "[b]ecause the initial pleading did not permit [the defendant] to discern the

amount in controversy").

    That is not all. In Bosky the Fifth Circuit actually stated that its requirement

of an "unequivocally clear and certain" basis for removal is unique to the second

paragraph of § 1446(b). See Bosky, 288 F.3d at 211 (holding that "the

information supporting removal in a copy of an amended pleading, motion, order

or other paper must be 'unequivocally clear and certain' to start the time limit

running for a notice of removal under the second paragraph of section 1446(b)."

(emphasis added)). The Bosky decision was explicitly based on the difference

between the first and second paragraphs of § 1446(b). See id. at 211–12.

41

## 2. The Dicta About Unliquidated Damages Removal Cases

The second statement in the Lowery opinion with which we disagree and that is at least arguably inconsistent with the result we reach here is the suggestion that its "receipt from the plaintiff" rule would apply to any case in which the complaint seeks unliquidated damages. See 483 F.3d at 1214 n.66. In a footnote, the opinion states that "[w]hen a plaintiff seeks unliquidated damages and does not make a specific demand, . . . the factual information establishing the jurisdictional amount must come from the plaintiff." Id. In support of that assertion, the opinion quotes a snippet from McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 182, 56 S.Ct. 780, 782 (1936): "Where the law gives no rule [regarding damages], the demand of the plaintiff must furnish one." Lowery, 483 F.3d at 1214 n.66.

The Lowery opinion's broad statement about all complaints seeking unliquidated damages is dicta because it is unnecessary to the decision in that case. The statement is not based on or otherwise tied to the language of § 1446(b) but is broader than that. When the Lowery opinion actually concludes that the evidence Alabama Power referred to in support of removal would not do, however, the reason given is not that there was a claim for unliquidated damages. Instead, the opinion states that "the evidence is not of the sort contemplated by §

42

1446(b)" and characterizes its reasoning as "[t]racking § 1446(b)." Id. at 1221 (emphasis added). That part of the opinion does not mention "unliquidated damages" or the general principle of federal jurisdiction that it says is derived from McNutt. See id. Because it relied only on the more narrow, statutory basis for its result, the Lowery opinion's musings on unliquidated damages are unnecessary to its decision. They are dicta. See supra Part III.C.1.

We are not persuaded by this dicta and believe it is mistaken. The only support offered for it is the snippet from McNutt—that "[w]here the law gives no rule [regarding damages], the demand of the plaintiff must furnish one." Lowery, 483 F.3d at 1214 n.66 (quoting McNutt, 298 U.S. at 182, 56 S.Ct. at 782). That snippet, however, was written in the context of a plaintiff's assertion of federal jurisdiction. See McNutt, 298 U.S. at 182–83, 56 S.Ct. at 782; see also Lowery, 483 F.3d at 1210 (recognizing, in another part of the opinion, that "[t]he action in McNutt did not arise from the removal context, but was brought originally in federal court"). Of course the plaintiff, who owns the complaint, must "furnish"—properly allege—the jurisdictional facts when bringing a case in federal court. But that tells us little, if anything, about removal cases like this one in which the defendant is asserting that federal jurisdiction exists.

43

In any event, McNutt does not support the Lowery opinion's statement that jurisdictional facts must come from the plaintiff in cases seeking unliquidated damages. Instead, what the Supreme Court instructed us in McNutt is that jurisdictional facts may come from whichever party asserts federal jurisdiction:

> The prerequisites to the exercise of jurisdiction . . . must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. . . . If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.

McNutt, 298 U.S. at 189, 56 S.Ct. at 785 (emphasis added). Those statements of the Supreme Court run directly contrary to the dicta in the Lowery opinion that in every unliquidated damages case the evidence in support of jurisdiction must come from the plaintiff—a party not seeking to have the power of the federal court exerted on his behalf.

Missing from the Supreme Court's explanation in McNutt is any restriction on the source of the evidence used to establish federal jurisdiction, or even the hint

44

of one.  The <u>McNutt</u> opinion is the first to lay down the "preponderance of the evidence" standard for removal cases.  <u>See</u> <u>Lowery</u>, 483 F.3d at 1209.  If the Supreme Court had meant to restrict the source of evidence that could be used to establish jurisdiction, it easily could have done so, but it did not.  We are not inclined to write into the key part of the <u>McNutt</u> decision language that the Supreme Court did not put there.  Besides, as one court has observed, "[i]t would be a strange result" if the law "forc[ed] a removing defendant to prove jurisdiction by a preponderance of the evidence, even as it categorically foreclosed defendants from being able to present [their own] objective evidence specific to the plaintiff's claims to demonstrate the amount in controversy."  <u>Spottswood v. Stewart Title Guar. Co.</u>, No. 10-0109, 2010 WL 1539993, at *3 (S.D. Ala. Apr. 16, 2010).  Strange indeed.

We are not aware of any other appellate court that has interpreted <u>McNutt</u> in the way that the <u>Lowery</u> opinion does.  As far as we can tell, it has never been the jurisdictional rule that a defendant may remove a diversity case seeking unliquidated damages only when the plaintiff is the source of facts or evidence on the value of the case.[20]  <u>See</u> W.E. Shipley, Annotation, <u>Criteria of Jurisdictional</u>

---

[20] Our discussion is limited to removal based on diversity jurisdiction.  By contrast, a defendant may remove on the basis of federal question jurisdiction only where that question appears on the face of the plaintiff's complaint.  <u>See, e.g.</u>, <u>Kemp v. Int'l Bus. Mach. Corp.</u>, 109

45

Amount in Tort Action for Unliquidated Damages in Federal Court, 47 A.L.R.2d 651 (1956) ("Where the complaint does not disclose the amount or value of the matter in controversy, it has been held, in removal proceedings, that reference may be made to the defendant's petition for removal in order to determine whether the jurisdictional amount is involved."). The Supreme Court long ago settled that the notice of removal "performs the office of [a] pleading," Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 202 (1877), that it "becomes a part of the record," and that "[i]t should state facts, which, taken in connection with such as already appear, entitle [the petitioner] to the transfer," Phoenix Ins. Co. v. Pechner, 95 U.S. 183, 185–86 (1877). Those Supreme Court decisions are inconsistent with the Lowery opinion's assertion that "the demand of the plaintiff" must provide the source of facts on the value of unliquidated claims even where the defendant is the party asserting federal jurisdiction. See also Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957) ("Removability is determined by the allegations of the complaint if it sets up the amount in controversy, and, if it does not, the court may look to the petition for removal.").

---

F.3d 708, 712 (11th Cir. 1997) ("Because a federal question must appear on the face of the plaintiff's complaint to satisfy the well-pleaded complaint rule, a defense which presents a federal question can not create removal jurisdiction. Thus, a case may not be removed to federal court on the ground of a federal question defense alone, even if that defense is valid.").

The interpretation of McNutt in the Lowery dicta would also undermine the purpose of the removal process, which "was created by Congress to protect defendants." Legg v. Wyeth, 428 F.3d 1317, 1325 (11th Cir. 2005). "Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." Id. (quotation marks and citation omitted). While we construe removal statutes narrowly, we do not rewrite them to add restrictions that cannot be found in their language and that would run counter to their purposes. See Tenn. Valley Auth. v. Whitman, 336 F.3d 1236, 1255 (11th Cir. 2003) ("[N]o canon of statutory interpretation can trump the unambiguous language of a statute."). As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 186, 27 S.Ct. 184, 188 (1907); see also Legg, 428 F.3d at 1325.

The Lowery opinion's dicta would provide plaintiffs with a trick by which they could make federal jurisdiction disappear. A diverse plaintiff could defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no

details on the value of the claim. That would subject the defendant's right to remove to the caprice of the plaintiff, which the Supreme Court has said in another context that we should not do. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294, 58 S.Ct. 586, 593 (1938) ("If [after removal] the plaintiff could . . . reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice."); see also 14B Wright et al., Federal Practice and Procedure § 3721, at 60 ("[R]emoval will be upheld when, by fraud, mistake, inadvertence, or artful pleading the plaintiff has concealed a legitimate ground of removal."); S. Rep. No. 109-14, at 9 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 10 ("The Committee notes that the purpose of [§ 1446(b)] is to prevent plaintiffs from evading federal jurisdiction by hiding the true nature of their case.").[21]

---

[21] The problem of artful pleading in this context could not be much better illustrated than it was by the exchange between the district court and plaintiffs' counsel at the hearing on the motion to remand in this case:

> MR. GELFAND: . . . You have to look at what the Plaintiff offers. It's really a unilateral viewpoint according to Lowery and its case law and its progeny. It says look at what the Plaintiff has provided in this case. You, Mr. Defendant, can't add anything to that mix. . . .

> THE COURT: So if a plaintiff alleges in the complaint, I am suing for in excess of $15,000 in damages, I reside in Palm Beach County, Florida, the Defendant is XYZ Corporation, you don't say anything about its residents or citizenship, . . . the Defendant [is] . . . stuck with the complaint that doesn't tell me anything . . . . So how does a defendant, where the Plaintiff never gives enough information in the complaint to create jurisdiction on the face, ever get a case removed?

48

Admittedly, a plaintiff's "artful pleading" trick probably would not fool the judicial audience forever. At some point during the performance—perhaps during discovery or even at trial—the plaintiff likely would have to provide the defendant with some "other paper" indicating the value of the claims. The defendant's receipt of that document might trigger a new thirty-day period in which removal is timely. See 28 U.S.C. § 1446(b) (second paragraph). The result in many cases would be that the Lowery opinion's dicta would delay, but not permanently bar, removal.[22]

Even so, if that dicta became law it would undermine the statutory scheme, which was designed to encourage expeditious removals from state to federal court. Section 1446(b) is based on "the recognized policy of the federal courts to require, as far as possible, prompt action on the part of those seeking a removal so as to avoid the evils of the delay necessarily attendant upon the change of forum." 2 Cyclopedia of Federal Procedure § 3:101, at 521 (3d ed., rev. 2006); see also, e.g.,

---

MR. GELFAND: In those specific facts you gave in that example, Your Honor, they don't, because it's their burden, not mine.

[22] In some circumstances, however, the Lowery opinion's interpretation could effectively bar removal. Non-CAFA cases generally "may not be removed . . . more than 1 year after commencement of the action." 28 U.S.C. § 1446(b) (second paragraph). Under the Lowery opinion's interpretation, a non-CAFA plaintiff might delay sending evidence of the jurisdictional amount to the defendant until after the one-year deadline passes. See id. But that particular problem cannot arise in CAFA cases. See 28 U.S.C. § 1453(b) (providing that CAFA defendants must follow all the removal procedures of § 1446 except for its one-year time limitation).

<u>Addo</u>, 230 F.3d at 762 ("[T]he purpose of the removal statute [is] to encourage prompt resort to federal court when a defendant first learns that the plaintiff's demand exceeds the federal jurisdictional limit."); <u>Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n</u>, 668 F.2d 962, 965 (7th Cir. 1982) (noting that one purpose of § 1446(b) is "to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court"). To force a defendant to tarry in state court when he has evidence establishing his right to be in federal court, and to force state courts to waste their resources on cases that will eventually be decided in federal court, cannot be what Congress had in mind when it enacted § 1446.[23]

### 3. Summary

To summarize, <u>Lowery</u> is a case in which the removal arose under the second paragraph of 28 U.S.C. § 1446(b). While some of the language in the

---

[23] We need not decide, and do not purport to decide, whether a defendant has a duty to investigate the necessary jurisdictional facts within the first thirty days of receiving an indeterminate complaint. District courts in our circuit are split on this issue. <u>Compare, e.g.</u>, <u>Kuhn v. Brunswick Corp.</u>, 871 F. Supp. 1444, 1446 (N.D. Ga. 1994); <u>and</u> <u>Richman v. Zimmer, Inc.</u>, 644 F. Supp. 540, 542 (S.D. Fla. 1986), <u>with</u> <u>Essenson v. Coale</u>, 848 F. Supp. 987, 989 (M.D. Fla. 1994). This case does not concern that situation. It concerns a defendant that can, within thirty days of receiving the initial complaint, marshal enough evidence of the jurisdictional facts to support a notice of removal. It is enough to say, as we do, that nothing in § 1446(b) or elsewhere requires a defendant in those circumstances to wait until the plaintiff gives it evidence establishing what it could already establish.

Lowery opinion sweeps more broadly than the facts of the case, that dicta is not binding. We have considered it for its persuasive value. But we are not persuaded by Lowery's dicta that its "receipt from the plaintiff" rule should apply to § 1446(b) first paragraph removal cases, or by its dicta that the rule should apply to any case in which the complaint seeks unliquidated damages. Instead, we conclude in this case, which arose under the first paragraph of § 1446(b), that the evidence the defendant may use to establish the jurisdictional facts is not limited to that which it received from the plaintiff or the court.

## IV. APPLICATION TO THIS CASE

We now apply the law we have discussed to the facts of this case. Kolter offered three types of evidence in order to carry its burden of establishing, by a preponderance of the evidence, that the value of the plaintiffs' claims, which is the amount in controversy, exceeds $5 million: (1) the face of the complaint and the contracts that the plaintiffs attached to it; (2) Clarke's declaration, which was submitted with the notice of removal; and (3) the unnamed plaintiffs' contracts and Gutierrez's declaration, which were submitted with Kolter's opposition to remand. Because those types of evidence raise different issues, we will discuss each one separately.

## A. The Complaint and the Attachments to It

The six contracts of the seven named plaintiffs were attached to the complaint and incorporated into it. Those contracts clearly identify $628,240 in deposits that the named plaintiffs agreed to pay Kolter. There is no dispute that those deposits count toward the amount in controversy. Subtracting $628,240 from CAFA's $5 million threshold leaves $4,371,760. Kolter, therefore, has the burden of establishing that the amount of the unnamed plaintiffs' claims is more likely than not to exceed $4,371,760. See Tapscott, 77 F.3d at 1356–57.

The complaint itself states that "[t]he class is believed to consist of over 300 members." Complaint ¶ 48. That allegation, however, does not indicate how many condominium units, and thus how many condominium deposits, are at issue. It may be that 301 ("over 300") individual class members contracted to purchase 301 condominium units, or it may be that they contracted to purchase fewer than that because some of the class members jointly purchased a unit.[24]

We do not have to speculate about that, however, because the plaintiffs admitted during a hearing that the putative class likely involves over 300 condominium units. Not owners, but units. And we have no problem with the

[24] We know, for example, that two of the named plaintiffs bought one condominium unit. Which is why the seven named plaintiffs seek the return of the deposits for only six units. See supra n.4.

52

district court having elicited that information from the plaintiffs at a hearing. See Lowery, 483 F.3d at 1214 n.66 ("[W]e do not mean to suggest that the court does not have discretion to hold a hearing on the motion to remand and allow the parties to be heard."); id. at 1218 n.75 (acknowledging that a district court may "question[ ] a plaintiff's counsel in open court about the value of the plaintiff's claims").[25] The plaintiffs explained in open court, and Kolter does not dispute, that at the time of their amended complaint 424 units at Two City Plaza had gone to contract, and "approximately 100 and change of them" had already gone to closing. That left more than 300 condominium units whose purchasers are in the putative class. The plaintiffs' clarification at the hearing can be used to support the removal even though it was not contained, and could not have been contained, in the previously filed notice of removal. See Lowery, 483 F.3d at 1218 n.78; see also Willingham v. Morgan, 395 U.S. 402, 407 n.3, 89 S.Ct. 1813, 1816 n.3 (1969). After subtracting the 6 contracts that the named plaintiffs signed from the 301 contracts in this controversy (the complaint and the plaintiffs' statements at

---

[25] In dicta, the Lowery opinion states that, although the district court may hold a hearing on the motion to remand, "[s]uch a hearing would ordinarily be limited to arguments on the sufficiency of the removing documents." 483 F.3d at 1214 n.66. That statement is dicta because the Lowery Court did not have before it a situation in which the district court had attempted to hear additional evidence from the defendant. See id. at 1190–91. The Lowery Court could not have cabined the district court's discretion to do something the district court had not even tried to do. See, e.g., Edwards, 602 F.3d at 1298.

the hearing establish that the number of contracts is at least that large), we are left with 295 contracts on which unnamed class members made deposits.

Knowing the number of contracts signed by unnamed class members, of course, is not enough to calculate the amount in controversy. We also need to know the amount of the deposit made or to be made on each contract or the average amount. Kolter argues that we should extrapolate the average deposit per contract from the amounts that we know the named plaintiffs agreed to deposit. As we mentioned earlier, the named plaintiffs agreed to pay a total deposit per condominium that ranged from $73,780 to $121,600, with an average of $104,707. Kolter proposes taking the lowest of those figures ($73,780) and multiplying it by the number of contracts by unnamed class members (295), which would produce a total ($21,765,100) that far exceeds CAFA's $5 million jurisdictional amount.

The district court concluded, and the plaintiffs contend, that Kolter's proposed extrapolation would be "impermissible speculation" under Lowery. See supra Part II.A. Kolter assumes that its extrapolation is appropriate because the named plaintiffs' claims are "typical" of those of the class. See Complaint ¶ 49. But the typicality element of a class action, by itself, does not allow us to infer that the amounts of the named plaintiffs' claims are similar to those of other class members. See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th

54

Cir. 1984) ("Differences in the amount of damages between the class representative and other class members do[ ] not affect typicality."). Kolter must establish that the claims are factually, not just legally, similar.

Given the allegations in the complaint, the contracts of the named plaintiffs attached to it, and plaintiffs' statement at the hearing, Kolter is left with the burden of proving that the value of the deposits for 295 units purchased by the unnamed class members is more likely than not to exceed $4,371,760 ($5,000,000 – $628,240). That is an average of $14,819.53 ($4,371,760 ÷ 295) per condominium unit. In Lowery the removing defendant had to prove only that $12,500 was in controversy per plaintiff, which was a "relatively low hurdle." 483 F.3d at 1220. Still, Lowery held that the defendant had not cleared that hurdle because it had failed to provide "any evidence [on] the value of individual claims." Id. Kolter argues that this case is different, because here we do have evidence on the value of unnamed plaintiffs' claims. We have that evidence, Kolter says, because we know that Kolter required each buyer to pay deposits of at least 20% of the value of the condominium unit (10% as the "initial deposit" and 10% more as the "construction payment"), and we know from the complaint itself that all the purchase agreements have "identical contract language" and were required to be identical in form. That means they all contain the 20% deposit requirement, which

55

in turn means that the amount-in-controversy requirement would be met if the average cost of an unnamed class member's condominiums was $74,100 or more.[26]

Although the record does not contain data on the purchase price of each unit at Two City Plaza, Kolter asserts that it is obvious from facts that appear in, or are "readily deducible" from, the amended complaint and the named plaintiffs' contracts attached to it that the average cost of the unnamed class members' condominium units is much greater than the requisite amount ($74,100). See Lowery, 483 F.3d at 1211 ("If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." (emphasis added)).  This case involves "luxury condominiums" that are all located in the same building in West Palm Beach, Florida, and the named plaintiffs contracted to spend between $368,900 and $608,000 for their units in that building.  It might be argued that it would defy common sense to believe that luxury condominiums priced as low as $74,100 were

---

[26] If the average purchase price were $74,100, the required 20% deposit would be $14,820.  The product of that amount and 295, the number of units, is $4,371,900.  That amount plus the $628,240 in deposits by the named plaintiffs yields a total amount in controversy of $5,000,140.

available anywhere in West Palm Beach from 2004 to 2006, let alone in a building that contained units priced at more than $600,000.

It is true that "[n]othing in Lowery says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." Roe, 637 F. Supp. 2d at 999; cf. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831–32 (8th Cir. 2005) (relying on record evidence "and common sense" to determine that removing defendants had failed to satisfy the amount-in-controversy requirement). And viewing facts through the lens of common sense is not star gazing. Nonetheless, we need not look solely to the complaint and the named plaintiffs' contracts that are attached to it, and have no occasion to express any view on how we would decide this case if that were the only evidence of the amount in controversy. It is unnecessary for us to answer that question, and we imply no view on it, because there is more evidence in this case.

## B.  Clarke's Declaration

Kolter's notice of removal went beyond the complaint and the attachments to it.  The notice of removal included the declaration of Michael Clarke, the CFO of Kolter's parent company, that Kolter had "collected more than $5 million in condominium unit purchase deposits from prospective purchasers of units at Two City Plaza."  The district court rejected that evidence because "it was not a document received by [Kolter] from Plaintiffs" and because it "speculates on the potential damage claim of putative class members, as opposed to named plaintiffs."  The district court erred in rejecting that evidence.

As to the "receipt from the plaintiff" rule, this case was removed under the first paragraph of § 1446(b).  As we have already explained at some length, that first paragraph does not restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal.  See 28 U.S.C. § 1446(b) (first paragraph).  See supra Part III.B–C.  This is not a second paragraph removal case, like Lowery, in which the defendant had to rely on "other paper" to show that a non-removable case "has become removable" due to a voluntary act of the plaintiff.  See 28 U.S.C. § 1446(b) (second paragraph).

As for the impermissible speculation part of the district court's reasoning, documents generated by the defendant do not necessarily involve impermissible

58

speculation. In <u>Lowery</u> we stated that "the removing defendant generally will have no direct knowledge of the value of the plaintiff's claims" and that such knowledge "will generally come from the plaintiff herself." 483 F.3d at 1213 n.63; <u>see also</u> <u>Thomas v. Bank of Am. Corp.</u>, 570 F.3d 1280, 1283 (11th Cir. 2009) (same). But "generally" does not mean invariably. Sometimes the defendant will possess evidence that was not received from the plaintiff but which nonetheless sheds light on the value of the plaintiff's claims. <u>See, e.g.</u>, <u>Lowery</u>, 483 F.3d at 1214 n.66 ("A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff."); <u>Sierminski</u>, 216 F.3d at 947 (employment case in which the defendant submitted a declaration from its Director of Human Resources indicating the plaintiff's salary and benefits information). And sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence.

The source of the evidence may impact its persuasiveness, but that is a different matter and one that depends on the facts of each case. <u>See</u> <u>Lowery</u>, 483 F.3d at 1214 n.66; <u>Evans</u>, 449 F.3d at 1164 n.3 ("Defendants have better access to information about conduct by the defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relationship to various

59

defendants."); see also Amoche, 556 F.3d at 51 ("Merely labeling the defendant's showing [as to the amount in controversy] as 'speculative' without discrediting the facts upon which it rests is insufficient. In the course of that evaluation [of the amount in controversy], a federal court may consider which party has better access to the relevant information." (internal citation omitted)); Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A., 988 F.2d 559, 566 (5th Cir. 1993) ("Removal petitions . . . are more likely to be persuasive in cases where the crucial facts supporting jurisdiction are known to the defendant, especially suits for injunctive or declaratory relief."), abrogated on other grounds by Marathon Oil Co. v. Ruhrgas, 145 F.3d 211 (5th Cir. 1998) (en banc).

Here, it is undisputed that Kolter possesses non-speculative knowledge of the amount of every putative class member's claim. The complaint itself alleges a class of more than 300 prospective purchasers and that a "ministerial determination" from Kolter's records would reveal the identity of those who provided deposits. Having access to those records, Clarke performed the ministerial determination that the complaint called for. After doing so, Clarke attested under penalty of perjury and based on his knowledge, including his knowledge of those records, that Kolter had "collected more than $5 million" in

60

deposits.[27]  Whatever the language of the second paragraph of § 1446(b) and Lowery's interpretation of it may require, we are not required to read into the first paragraph of that subsection the proposition that the party with the best access to and knowledge of the key evidence cannot bring it forward.

The district court also erred as a matter of law when it faulted Clarke's declaration for estimating "the potential damage claim of putative class members, as opposed to named plaintiffs."  Under CAFA the claims of "the individual class members shall be aggregated" for purposes of determining the amount in controversy.  28 U.S.C. § 1332(d)(6).  Section 1332(d)(1)(D) provides, in turn, that "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  28 U.S.C. § 1332(d)(1)(D) (emphasis added).  The possibility that the putative class will not be certified, or that some of the unnamed class members will opt out, is irrelevant to the jurisdictional determination, which is based only on the facts as they exist at the time of removal.  See, e.g., Amoche, 556 F.3d at 51; Vega, 564 F.3d at 1268 n.12; Miedema, 450 F.3d at 1332 n.9; Sierminski, 216 F.3d at 946.

---

[27] Clarke's declaration stated that the records were "maintained under my supervision, direction, and control by individuals who are responsible for recording and maintaining such information at or near the time of the events recorded in these documents," and that his statements were based on his "personal experiences as Chief Financial Officer of [the parent company] and upon the corporate records of [Kolter]."

## C.  The Post-Removal Evidence

There is another way that Kolter carried its burden of establishing federal jurisdiction by a preponderance of the evidence.  The unnamed plaintiffs' contracts and the Gutierrez declaration, which Kolter attached to its opposition to remand, are themselves sufficient to prove that there is more than $5 million in controversy.  The district court read Lowery as barring it from considering that post-removal evidence, but we disagree.

According to the district court, Lowery requires a removing defendant to submit all of its jurisdiction-supporting evidence before the plaintiff files a motion to remand.  That interpretation is based on this language from Lowery:  "In assessing whether removal was proper in . . . a case [where the plaintiffs file a timely motion to remand], the district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents."  483 F.3d at 1213–14 (emphasis added).

To the extent that Lowery would bar the consideration of evidence submitted after the case is removed, it conflicts with our decision in Sierminski v. Transouth Financial Corp., 216 F.3d 945 (11th Cir. 2000), which came seven years before the Lowery decision.  And, of course, where two of our decisions conflict,

we must follow the earlier of them.  See, e.g., Ohayon, 483 F.3d at 1289;

Hornaday, 392 F.3d at 1316.

In Sierminski this Court addressed the question "whether in determining the

propriety of removal, the district court may consider evidence submitted after the

removal petition is filed."  216 F.3d at 946.  The defendant, after removal but

before the district court's ruling on the motion to remand, had provided additional

information on the amount in controversy to the district court.  See id. at 947

(noting that the additional evidence included a declaration from one of the

defendant's employees as well as evidence that the plaintiff had failed to respond

to a request for admissions).  The plaintiff's only jurisdictional contention on

appeal was that the "defendant must submit evidence demonstrating the existence

of federal jurisdiction at the time of the filing of the removal petition itself and

cannot rely on post-petition evidence to support jurisdiction."  Id. at 948.  We

squarely rejected that argument—the same argument that the plaintiffs make in

this case.

> While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition.  We . . . adopt[ ] a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction.  We emphasize . . . that under any manner of proof, the jurisdictional facts that support removal must be

judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time.

Id. at 949 (quotation marks and citation omitted); see also id. at 946 ("We hold that the Court may consider [post-removal] evidence, but only to establish the facts present at the time of removal."); Williams, 269 F.3d at 1319 (discussing Sierminski). The facts of Sierminski are materially indistinguishable from this case insofar as the consideration of post-removal evidence is concerned.

There is no actual conflict between the decision in Sierminski and the holdings of Lowery, because the language in the Lowery opinion barring the use of post-removal evidence is only dicta. Lowery did not actually bar or refuse to consider post-removal evidence when it came to deciding the case. See 483 F.3d at 1218–21. The Court stated in passing that Alabama Power had supplemented its notice of removal "[f]ollowing the plaintiffs' motion to remand." Id. at 1220; see also id. at 1189 (noting that Alabama Power filed a supplement to its notice of removal one day after the plaintiffs had filed their motion to remand). But that was not the basis on which the Lowery opinion declined to consider that evidence. See id. at 1220–21 (rejecting the supplemental evidence on other grounds).[28]

_____

[28] The Lowery opinion does state that the district court must "review the propriety of removal on the basis of the removing documents." 483 F.3d at 1211 (emphasis added); see also id. at 1214 n.66. In construing Lowery, we read the phrase "removing documents" to include all the documents before the court when it reviews the propriety of removal—if, of course, those documents are relevant to the time of removal, Sierminski, 216 F.3d at 949. See Lowery, 483

Not only that but the <u>Lowery</u> opinion expressly recognizes that a defendant <u>may</u> add post-removal evidence of jurisdiction to the record when that evidence is otherwise admissible. It says that "a defendant may effectively amend a defective notice of removal upon receipt of additional evidence that supplements the earlier-filed notice." <u>Lowery</u>, 483 F.3d at 1214 n.66; <u>see also</u> <u>Willingham</u>, 395 U.S. at 408 n.3, 89 S.Ct. at 1816 n.3 ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits."); <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 840 n.1 (9th Cir. 2002) ("The district court did not err in construing [the defendant's] opposition [to remand] as an amendment to its notice of removal.").[29]

For these reasons, the jurisdictional evidence that Kolter attached to its opposition to remand should not have been excluded merely because it was

_____

F.3d at 1211 (referring to the "documents before the court"); <u>id.</u> at 1194 ("What the district court had before it in considering the propriety of removal was limited to those documents provided by Alabama Power in seeking removal."). In other words, a defendant's opposition to remand is a "removing document." If we are wrong in our interpretation of the <u>Lowery</u> opinion, then it is inconsistent in this respect with the earlier <u>Sierminski</u> decision, which trumps it.

[29] We also note that § 1446(a) provides that a notice of removal should contain only "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). That provision would make little sense if a defendant were categorically barred from supplementing its "short and plain statement" with additional evidence and explanation. <u>Cf.</u> <u>McNutt</u>, 298 U.S. at 189, 56 S.Ct. at 785 ("If [the jurisdiction-asserting party's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.").

65

submitted in response to the plaintiffs' motion to remand.  See Sierminski, 216

F.3d at 946, 949; see also Willingham, 395 U.S. at 408 n.3, 89 S.Ct. at 1816 n.3.[30]

And the plaintiffs concede that if this post-removal evidence is considered, Kolter

has established the amount in controversy by a preponderance of the evidence.

V.

The judgment of the district court is REVERSED, and the case is

REMANDED with instructions to rescind the order remanding the case to state

court.

---

[30] Because we decide this appeal on the grounds that we do, we have no occasion to address the nature and extent of the contract-law exception to the "receipt from the plaintiff" rule that the Lowery opinion mentions.  See Lowery, 483 F.3d at 1214 n.66 ("A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff.  In such situations, the underlying substantive law provides a rule that allows the court to determine the amount of damages. For example, in contract law, the default measure of damages is expectation damages; a court may look to the contract and determine what those damages would be.").

PRYOR, Circuit Judge, specially concurring, in which CARNES, Circuit Judge, joins:

I concur fully in the panel opinion. I agree with the panel opinion that a defendant who removes a case under the first paragraph of subsection (b) of the removal statute, 28 U.S.C. § 1446(b), is entitled to file evidence to prove by a preponderance the amount in controversy under the Class Action Fairness Act. I write separately to explain why I doubt the validity of the related holding of Lowery v. Alabama Power Co. that district courts may not also allow post-removal discovery regarding the amount in controversy under the Class Action Fairness Act. 483 F.3d 1184, 1215–18 (11th Cir. 2007). That view is inconsistent with Supreme Court precedent, the precedent of this Court, and hornbook law about federal practice.

The precedents of the Supreme Court and this Court have for several decades granted district courts wide discretion in determining how to resolve questions of jurisdiction. See U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 79, 108 S. Ct. 2268, 2272 (1988); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 2389 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); Gibbs v. Buck, 307 U.S. 66, 71–72,

59 S. Ct. 725, 729 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."); Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 666–67 (5th Cir. 1971). Our own precedent holds that a plaintiff who chooses a federal forum "should be given the opportunity to discover facts that would support . . . allegations of jurisdiction" and ordering "dismissal without affording the plaintiff any opportunity to proceed with reasonable discovery [is] premature and an abuse of the court's discretion." Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984). As one of the leading treatises on federal practice explains, "[I]t has long been clear that discovery on jurisdictional issues is proper." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2009, at 124 & n.2 (2d ed. 1994).

Our precedents have taken for granted that a defendant who removes a civil action has the same right that a plaintiff enjoys to conduct discovery about jurisdictional facts. See Miedema v. Maytag Corp., 450 F.3d 1322, 1330 (11th Cir. 2006); Williams v. Best Buy Co., 269 F.3d 1316, 1319–20 (11th Cir. 2001); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 948–49 (11th Cir. 2000); see also Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005); Guillory v. PPG Indus., Inc., 434 F.3d 303, 311 (5th Cir. 2005). That assumption is consistent

68

with the well-established rule that a "defendant seeking removal can usually determine an appropriate range of damages through discovery." 16 James Wm. Moore et al., Moore's Federal Practice § 107.14[2][g][i][A] (3d ed. 2007); see also id. § 107.14[2][g][v] ("If the jurisdictional amount is not facially apparent, the court should look to the removal notice and may require post-removal evidence relevant to the amount in controversy at the time of removal when determining whether the case is removable."). This even-handed treatment, which places plaintiffs and removing defendants "on equal footing in seeking a federal courtroom," makes eminent sense. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 703–04 (9th Cir. 2007) (O'Scannlain, J., specially concurring) (discussing the burden of proof on jurisdictional facts). Any other rule ignores the fact that removing defendants, as much as plaintiffs, have a "statutory right" to a federal forum if they can prove the relevant facts. Id. at 703.

There is no reason to suspect that the Class Action Fairness Act, which "is silent on the matter," altered any of these well-established procedures. Miedema, 450 F.3d at 1327–30 (holding that because the Act is silent as to which party bears the burden of establishing federal jurisdiction, the "well-established rule" that defendants bear the burden applies). At least one of our sister circuits has assumed that district courts may permit defendants to conduct discovery about

jurisdictional facts under the Act, Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 690–92 (9th Cir. 2006); cf. Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 682 (7th Cir. 2006) ("[T]he plaintiffs have the right, through appropriate discovery, to explore the facts relevant to the court's jurisdiction as the case progresses."), and district courts have done so. See, e.g., Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 983 (S.D. Cal. 2005); see also S.I. Strong, Jurisdictional Discovery in United States Federal Courts, 67 Wash. & Lee L. Rev. 489, 557 (2010) ("Jurisdictional discovery regarding subject matter jurisdiction might also be sought in class action suits pursuant to the Class Action Fairness Act (CAFA).").

The contrary holding of Lowery has not been well received. One of the district courts in this Circuit has expressed its understandable confusion about "[t]he extent to which any post-removal discovery is permissible in a post-Lowery world," and observed that "Lowery does not acknowledge the existence of Sierminski," which the court found especially relevant. Wood v. Option One Mortgage Corp., 580 F. Supp. 2d 1248, 1254–55 & n.5 (N.D. Ala. 2008). Others have offset the severity of the Lowery holding about discovery by taking a narrow view of the requirement that they not engage in "rank speculation," Lowery, 483 F.3d at 1215 n.67, when determining the amount in controversy. See Nelson v.

70

Whirlpool Corp., 668 F. Supp. 2d 1368, 1375–76 (S.D. Ala. 2009); Roe v. Michelin N. Am., Inc., 637 F. Supp. 2d 995, 1001–02 (M.D. Ala. 2009). The discovery holding of Lowery has also been criticized in legal scholarship. See, e.g., Thomas M. Byrne, Class Actions, 59 Mercer L. Rev. 1117, 1123–26 (2008); Lonny S. Hoffman, Burn Up the Chaff with Unquenchable Fire: What Two Doctrinal Intersections Can Teach Us About Judicial Power over Pleadings, 88 B.U. L. Rev. 1217, 1249–50 & n.193 (2008); Michael W. Lewis, Comedy or Tragedy: The Tale of Diversity Jurisdiction Removal and the One-Year Bar, 62 SMU L. Rev. 201, 223–25 (2009); Jacob R. Karabell, Note, The Implementation of "Balanced Diversity" Through the Class Action Fairness Act, 84 N.Y.U. L. Rev. 300, 321–22 (2009). As one commentator stated, "The origins of the court's bar on jurisdictional discovery are inscrutable. The court referred to Federal Rules of Civil Procedure 8(a) and 11 in support of its holding but cited no precedent for a prohibition on jurisdictional discovery after removal, and there is precedent to the contrary." Byrne, supra, at 1124 (footnotes omitted); see also id. at 1126 ("The court's refusal to permit any jurisdictional discovery and its four-corners-of-the-pleadings approach are an unwelcome relapse into legal formalism.").

We eventually will have to revisit the holding of <u>Lowery</u> that jurisdictional discovery is unavailable to prove the amount in controversy. This appeal does not present that opportunity, but I do not doubt that the opportunity will come.